**LAW OFFICES OF DAVID WOLFF LLC**
**396 Route 34**
**Matawan, New Jersey 07747**
**(732) 566-1189**
**DW/3331**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

```
                                            x
                                            :
In the Matter of:                           :    Case No. 20-23328-JKS
                                            :
ALICE R. CUTLIFF,                           :    Chapter 7 Proceeding
                                            :
                            Debtor.         :    Hon. John K. Sherwood
                                            x
```

**CERTIFICATION OF DAVID WOLFF IN RESPONSE TO DEBTOR'S**
**OBJECTION TO TRUSTEE'S [sic] REQUEST FOR COMPENSATION**

David Wolff, of full age, certifies as follows:

1. I am the managing member of Law Offices of David Wolff LLC ("Applicant"). In addition, I serve as the Chapter 7 Trustee ("Trustee") of the above-captioned debtor Alice R. Cutliff ("Debtor")..

2. I submit this Certification in response to the 'Debtor's Brief in Support of Her Objection to Trustee's Request For Compensation' ("Objection"), and in further support of Applicant's first and final application for fees and expenses in this case.

3. At the outset, it should be stated that the Trustee's compensation shall be far less than is typical in a Chapter 7 case when real property is sold. The reason for that is that this is a 100% case, meaning creditors shall have their claims paid in full, with a surplus being paid back to the Debtor. The Trustee is not compensated on the homestead exemption payment (which has

already been remitted to the Debtor though it could have been challenged for reasons set forth below) or the surplus amount.

4. Although not properly stated in the Objection, in reality the Objection is seeking to object to the legal fees of Applicant sought in its first and final fee application. The legal work performed by Applicant in this case is explained in detail in the fee application narrative, as well as the individual time entries, which are far more detailed than time entries typically submitted to the Court by other counsel.

5. The Objection makes a lot of conclusory and false claims, such as the case "was not complicated", "most of the services performed are within the scope of duties of the Chapter 7 Trustee" and that Applicant's hourly rate is "exurbanite" [sic] (bottom of p. 8).

6. In reality, nearly every Chapter 7 asset case has complexities in one way or another, and the legal services that are the subject of the first and final fee application here are not within the scope of duties of the Trustee (but there are many services that are within the purview of the Trustee that have **not** been billed, such as preparing for and conducting the meeting of creditors, filing a Notice of Assets, reviewing all proofs of claim filed, making all deposits, reviewing monthly bank statements and reconciling accounts, preparing and submitting the detailed Trustee Final Report, preparing and submitting the detailed Trustee Distribution Report, and making distributions, including the exemption payment already made to the Debtor). Further, Applicant's hourly rate is much lower than many bankruptcy attorneys with over 31 years of experience in this District. Applicant's billing rate would be almost double if he worked at a large firm, and Judges in this District have stated the work product submitted to the Court regularly by Applicant compares favorably with work product submitted by the large firms.

7. As admitted by the Debtor in the Objection, the Debtor falsely valued her real property located at 119-121 Pineview Terrace, Plainfield, New Jersey ("Property") on her bankruptcy petition filed on December 7, 2020, and signed under penalty of perjury, at only $245,000. The Debtor further defended this valuation at her meeting of creditors, also testifying under oath.

8. If the Trustee and Applicant had taken the Debtor at her word, via the petition or via the meeting of creditors, this would have been deemed a no-asset case, and general unsecured creditors would have received $0.00, as opposed to receiving 100% on their claims plus interest, which is what general unsecured creditors will be receiving in this case, at its conclusion.

9. Because the valuation provided by the Debtor was not believed, rightfully, by the Trustee, Applicant began work on the case one month following the meeting of creditors. While the case was filed in early December 2020, and the meeting of creditors was held in early January 2021, Applicant's first time entry is not until February 8, 2021. All work performed in the first two months of the case is deemed Trustee time and not billed.

10. Applicant communicated with Debtor's counsel for the first time after obtaining a valuation from an independent real estate broker, and only subsequently thereto did Debtor's counsel admit the significant net equity in the Property that was hidden on the petition and at the meeting of creditors.

11. Applicant prepared and filed pleadings to retain its firm as counsel to the Trustee and Weichert Realty as broker to the Trustee, which respective retentions were granted. All of the legal work performed is set forth in detail in the fee application narrative and the detailed attorney time entries, which shall not be repeated here.

12. Thus, to make a long factual story short, Applicant engaged in attorney review after a

detailed contract of sale was signed for the Property, dealt with all inspection issues, prepared and filed a very detailed Motion and supporting pleadings to authorize the sale, and on June 2, 2021 the Court entered an Order authorizing the sale of the Property for the sum of $435,000, an amount 77.5% in percentage, and $190,000 in dollar amount, greater than the value set forth in the petition. Applicant prepared all seller's closing documents, communicated regularly with buyer's counsel regarding a litany of pre-closing legal and factual issues, and attended a closing on July 27, 2021.

13. While the credibility of the Debtor and her counsel can legitimately be questioned based upon the false valuation of the Property provided, and as a result the Trustee could have challenged the Debtor's exemption (which has already been paid). Applicant will nevertheless address baseless objections to many time entries set forth in the Objection.

14. As to the February 8 entry, this involved a review of all documents produced, the valuation of the Property by Alma Billings, a telephone conference with Ms. Billings, and analysis of a potential estate claim one month after the meeting of creditors, not in preparation for it. It is symbolic that the Objection makes a false statement in the first time entry objected to, because the Objection is replete with false and misleading statements.

15. The February 20 entry involved a review of the file to ascertain facts, and the drafting of a detailed letter to Debtor's counsel regarding the clear net equity in the Property despite the Debtor's claim to the contrary, and a careful breakdown of the calculation of net equity.

16. The February 26 entry involves several events, including a review of all legal and factual information gleaned to date related to the Property, the drafting of respective correspondence to Debtor's counsel, and an extended telephone conference with Debtor's

counsel, during which call Debtor's counsel David Knapp, Esq. admitted for the first time the significant net equity in the Property, accepted for the first time the valuation of Ms. Billings, and discussed the potential of the Debtor resolving the net equity in a consensual manner (which the Debtor ultimately was unable to do). Ms. Ennis' description of the legal work that day is, to be nice, disingenuous.

17. The March 9 time entries describe a litany of communications and legal work performed, not the drafting a single email as Ms. Ennis falsely implies. Also, it should be noted that Applicant's paralegal, as this Court is well aware, generally does not bill for work performed by her that is customarily billed by larger firms, such as the filing and service of pleadings and communications with counsel. This is a benefit to creditors, not a detriment, by reducing the amount sought in any fee application..

18. The April 7 time entry includes a review of a detailed contract of sale, as well as an addendum specific to bankruptcy cases, to protect the bankruptcy estate and its creditors. A sale of real property in a Chapter 7 is anything but ordinary, it typically is much more complex than a sale outside bankruptcy, and Applicant is not paid anything at closing.

19. The April 13 time entry references buyer's attorney review letter, which had 29 paragraphs of objections with subparts. The 2.3 hours billed that day is precisely how long it took to review and analyze all the objections to the contract raised by buyer's attorney Paul Mandal, Esq., and then speak with Mr. Mandal at length about which objections could be sustained, and why most objections raised could not be accepted due to legal or factual reasons associated with a Chapter 7 case.

20. The objections to the April 22 and April 23 time entries exemplify more

disingenuous comments of Ms. Ennis. The very detailed Motion to authorize sale, including a supporting Application and extensive form of Order, takes time to prepare properly in order to protect the interests of the bankruptcy estate and other parties in interest. Good legal work, notably the drafting of full, complete and accurate legal pleadings, takes time. Applicant typically reviews and revises pleadings many times to make sure they are right, and achieve the results sought.

21. The April 28 time entry references the drafting of a correspondence, the review of three correspondence from others, and a review of the detailed inspection report. Ms. Ennis knows this (as she read the time records) but makes a blatantly misleading comment with respect to this time entry.

22. The June 1 entry involves 7 different tasks (4 telephone calls, 2 emails, and preparation for a hearing).

23. The June 3 entry involves the drafting of a very detailed letter to buyer's counsel, debtor's counsel and the realtor, as specifically set forth in the time entry. Yet Ms. Ennis has the audacity to falsely state it is "reviewing the same Order."

24. After addressing the first 11 time entries objected to in detail above, it is clear that responding to the remaining objecting paragraphs in painstaking detail would simply point out more of the same baseless, false and misleading statements of Debtor's counsel debunked above. If the Court requires consideration of any additional time entries objected to, I shall do so at oral argument. It should be pointed out, though, that numerous times entries were required due to the need to respond to issues raised by Ms. Ennis that never needed to be raised. One is that, following the closing, Ms. Ennis (without communicating with Applicant in advance, as is also

the case with the filing of the Objection) filed an Amended Schedule C, claiming an increased exemption to which the Debtor was not legally entitled. Applicant communicated with Ms. Ennis and convinced counsel to withdraw the Amended Schedule C, thereby saving administrative time and effort that would have been required to formally object to the Amended Schedule and prepare for and participate in a contested hearing thereafter. Secondly, Ms. Ennis repeatedly communicated in the final stages of the case with Applicant and the Trustee's accountant regarding the bankruptcy estate tax return, for which the Debtor had no role or no obligation.

25. Case law cited by Debtor's counsel is inapplicable. Debtor's counsel raises In re Top Grade Sausage. The main point of that opinion is that, while a Chapter 7 trustee's counsel can be compensated for legal work, Debtor's counsel cannot be compensated where a Chapter 7 Trustee is appointed. Here, the legal work sought to be compensated is that of Trustee's counsel, not Debtor's counsel.

26. Even the statute referenced by Debtor's counsel is inapplicable. 11 U.S.C. Section 326 (a) deals with a Trustee's compensation, which as referenced above will be significantly reduced in this case because it is a surplus case. It has nothing to do with compensation of attorney's fees for the Trustee for legal work performed.

27. I can think of many ways I would rather spend my weekend than drafting this detailed response to the Objection. It seems the "in thing" to do these days is object to attorney's fees. At times, there may be some merit to such objections. But this is NOT one of those times. This case is going to be a 100% distribution case solely because of work done initially by the Trustee (for which compensation is not sought) and later legal work performed by Applicant. If the Debtor's petition or testimony had been relied upon, this would have been a no-asset case.

And the only selfish reason for the Objection is the fact that the Debtor is getting a surplus, and hopes to get still more by objecting to the valid legal fees incurred that led to thwarting an attempt to mislead the Court and the Trustee as to the value of the Property in the first place.

28. Based upon the foregoing, it is respectfully requested that the Court award Applicant all fees and expenses sought in this case for the following two reasons: i) the legal fees sought were actual, reasonable and necessary to reach the results achieved in this case and ii) disallowance of any legal fees sought will reward the Debtor further for failing to disclose the value of the Property, which discovery of said value led to this case being an asset case at all.

29. It is further respectfully requested that the Court take any other actions the Court deems just and proper, including but not limited to awarding fees that were expended by Applicant in responding in detail to the baseless objection, in a surplus case.

30. I hereby certify that the foregoing statements made by me are true to the best of my knowledge, information and belief. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

/s/David Wolff  
DAVID WOLFF

DATED: November 15, 2021